74 So.2d 689 (1954)
ATLANTIC COAST LINE R. CO. et al.
v.
JOHNSTON (Two Cases).
Supreme Court of Florida. Division A.
July 30, 1954.
Rehearing Denied September 23, 1954.
Leroy B. Giles, Edward K. Goethe and David W. Hedrick, Orlando, for appellants.
Jack F. Wayman and A.M. Crabtree, Jr., Jacksonville, for appellees.
TERRELL, Justice.
Account of a crossing accident at Fort Mason, near Eustis, Florida, Edgar Johnston, a minor, secured a judgment against appellant for $36,000. Mrs. Gertrude May Johnston, a widow and mother of Edgar Johnston, secured a judgment for $4,000, account of loss of services of her minor son, hospital expenses, etc. Both judgments grew out of the same accident. The cases were consolidated for trial, separate judgments were entered and the two cases were treated as one on appeal.
Appellant contends that the accident was due solely to the negligence of Edgar Johnston who was driving the automobile at the time of the accident, and being so, neither plaintiff should be permitted to recover.
The answer to this question turns on the proof as to (1) whether or not the *690 crossing was hazardous, (2) visibility at the time and place of the accident, (3) location of the locomotive and freight cars at the time of the accident and (4) condition of the approach to the crossing. It is admitted that the accident took place about 2:20 A.M. while the freight train with which the automobile collided was on a routine pick-up and that the crossing was fully occupied by it at the time of the accident. Every other factual aspect was stubbornly controverted.
The crossing was on the outskirts of Eustis, a community of four or five thousand people. The highway makes a curve, some witnesses said an S curve across the center of which the railroad passes and at which the accident took place. As to whether or not the crossing was obstructed by trees and underbrush the evidence was in conflict. There was also evidence to show that one traveling from Leesburg to Eustis rounded the curve and was right at the crossing before he realized it. Other facts shown were that the night was dark, it was raining, the train was an "extra", picking up box cars between Leesburg and Eustis. The accident occurred June 4, when shipping was heavy. The train had been switching but was standing still at the time and had blocked the crossing about four minutes prior to the accident. The road was wet, it was black and the car which blocked the crossing was a stock car with slats on the side so spaced that one could see through the side of the box car except when it was loaded. The engineer testified that the locomotive was only 40 feet from the crossing but there was other evidence to the effect that it was much farther. At any rate, the engineer made no attempt to back it up and clear the crossing.
The driver of the automobile was not familiar with the road and was unaware of the crossing, he was driving at 20 or 25 miles per hour, his lights were good, his windshield wipers were working and his car was in good mechanical condition. He slowed up as he approached the crossing but said the trees and underbrush pressed in on him so that he felt he was driving through a tunnel. Immediately he rounded the curve the car that blocked the crossing loomed in front of him, it was dark, the rain was falling, the road was black top and the environment was such that the driver of the automobile could not see the blocked railroad in time to apply the brakes. No lights were visible on the locomotive, about the crossing or elsewhere. Many of these facts were controverted but the story as detailed was before the jury for consideration.
Other evidence showed that the view was unobstructed for over 600 feet approaching the crossing, that plaintiff ran over four clearly visible warnings or stop signs, that a lighted locomotive stood near the crossing, that the highway was light, that no obstruction cut off the view of the lighted locomotive, that the cattle car which blocked the highway was red with shining paper visible between the slats, that the road was light gray and easily visible and that the highway was wide and unobstructed. Documentary evidence supports appellant's contention. It is true that much of the evidence on essential points was in direct conflict but as we have so often said, resolving conflicts in the evidence is for the jury and when there is ample evidence to support their verdict  we will not disturb it when the trial judge refuses to do so.
In this case the court charged the jury in reapportionment of damages, under Section 768.06, Florida Statutes 1951, F.S.A., comparative negligence statute. There is no challenge to the judgment for excessiveness. If this accident had taken place on a clear night a judgment against the railroad company could not stand because the required warning signals were in place and the track had been blocked but four minutes. The driver of the automobile was negligent in the manner in which he approached the crossing but the appellant was also negligent in the manner in which it guarded the crossing. It was operating a special train, it was dark and raining, the local environment was bad, the road was frequently traveled and it had been blocked four minutes at 2:20 A.M. It is common *691 knowledge that motorists now traverse the highways all times of the day and night. In rural areas where town meets the country, freight trains are not expected to block the highway at two o'clock in the morning, uncovered by a red light.
Under such circumstances, if a highway is to be blocked, ordinary prudence would require that a flagman be placed so as to guard the crossing while it is blocked. If not possible to do this much, certainly flares or lights of some kind should have been placed to warn travelers. Such was the factual situation that confronted the jury and we are not prepared to say that the verdict was erroneous.
It follows that the judgment must be and is hereby affirmed.
ROBERTS, C.J., and SEBRING and MATHEWS, JJ., concur.