PEARSON, Associate Justice.
The appellants here were plaintiffs below, who recovered jury verdicts against the appellees, who were defendants below. In this opinion, the parties shall be referred to as they stood in the trial court. After rendition of verdicts, the trial court granted defendants’ motion for judgment notwithstanding the verdicts, set qside the -Verdicts,. *529 and entered final judgment for the defendants. From that final judgment, this appeal is prosecuted.
In entering judgment for the defendants, notwithstanding the jury’s verdicts for the plaintiffs, the learned trial judge declared that “there- was no evidence submitted * * * upon which the jury could lawfully find a verdict * * * ” for the plaintiffs. Since this is a case involving the application of our comparative negligence statute, Sec. 768.06, F.S.A., our inquiry narrows to whether or not there was competent evidence presented on the trial of the cause, which the jury could believe and accept, sufficient to establish causal negligence on the part of the defendant railroad.
The undisputed testimony offered at the trial discloses that plaintiff W. T. Hutton and his wife, plaintiff Nettie Hutton, following the retirement in 1946 of W. T. Hutton as a railroad engineer, moved from their residence in the State of Indiana to Orlando, Florida; that at the time of the accident in question, the plaintiffs were returning from a visit to their former home State; that at that time, plaintiff W. T. Hutton was about 70 years of age, and his wife about 65 years old; that neither was familiar with the railroad crossing where the accident occurred or recalled that the crossing was there, having traversed it only once before the accident, and that time about one year prior to the accident.
The plaintiffs were traveling in their 1949 automobile, which was equipped with the original lights installed in the car by the car’s manufacturer, which lights had been checked and approved for use by the Florida Highway Patrol before they left Orlando for their trip north, and again inspected, with the same result, in Indiana, before they commenced their return trip to Florida.
The accident in controversy occurred at the crossing of U. S. Highway No. 441 and the defendant railroad’s tracks within (but near- the edge, or outer limits of) the corporate boundaries of Tavares, Florida, The plaintiffs were traveling east on the highway at night, with their car’s dim lights burning, at a speed not in excess of 18 miles per hour, and their car collided with the west side of one of the defendant railroad’s gondola cars standing motionless on the “house track” over and completely obstructing the crossing. Approximately two blocks back, the plaintiffs had stopped their car for a traffic control signal light at a side street intersection with the-highway, and, after passing through the intersection, another automobile drove out from the side street intersecting the highway and turned into the highway and followed their car. Neither of the plaintiffs (W. T. Hutton was driving), who were keeping a careful lookout ahead, saw any of the railroad warning signs to the right and elevated above the highway as their car approached the tracks, or saw the tracks themselves, nor did they see the gondola car occupying the crossing. The occupants of the car driving approximately SO feet behind the plaintiffs’ car, although they were familiar with the crossing (unlike the plaintiffs), likewise did not see the train until the mo-irient of the collision between the plaintiffs’ car and the train.
Just prior to the collision, the railroad had been engaged in a switching operation. The last move before the accident had been from the depot side of the highway, or from the plaintiffs’ right, in which two diesel locomotives pointed south backed northward into the “house track”, and. at a point south of the highway coupled' to a “cut” of three gondola cars. The plan was to hack the three gondola cars northward on the “house track” to a point approximately 65 feet north of the crossing, and the movement Was commenced. The “cut” of three -cars was backed to and stopped with its north end four feet south of the crossing; defendant C. R. Jones, the railroad brakeman, carrying a white lantern, then dismounted from the north end of the “cut”, walked to the center- of the highway, looked for vehicular traffic in both directions, and seeing *530 none, signalled the train to back up and couple to the other “cut” of cars standing 65 feet north of the crossing. This was done and, as the “cut” of cars moved north over the crossing traveling toward the “cut” to which they were to couple, defendant Jones caught up on the leading end of the “cut” and rode 65 feet to the point where the coupling was made. The movement stopped and he went in between the two “cuts” and was in the act of connecting the air hose when he heard the noise of the collision of the plaintiffs’ car with the west side of a gondola car, the second car from the locomotives, then standing motionless over the highway.
The gondola car with which the plaintiffs’ car collided was dark and dingy, about the same color as the highway surface. There was conflict in the testimony on other points, but there was competent evidence, if the jury chose to believe it, that the night was dark, that there were no lights visible anywhere near the gondola car, that the street light near the crossing was not burning, and that the railroad bell was not ringing just before the collision, at the moment of impact, or after the accident.
The principal portion of the beam of the “dim” or “city” lights of the plaintiffs’ automobile, which were in use at the time of the accident, struck the highway approximately 52 feet in front of their car on a level stretch. However, the “bright” or upper beam of their car’s headlights was in good working order and, with the use of those lights, the plaintiffs could see 400 or 500 feet ahead. Had the “bright” or upper beam headlights been in use at the time of the accident, it is agreed that there would have been no accident, since plaintiff W. T. Hutton would have seen the gondola car in enough time to apply the car brakes and avoid the collision. Using the dim lights, however, and because of a dip in the road of the highway (the exact extent and effect of which is in dispute), the plaintiffs did not see the gondola car with which their automobile collided until the moment of impact.
The action of the learned trial judge below, in setting aside the jury’s verdicts for the plaintiffs and entering judgment for the defendants, in the light of the facts outlined above, must be taken to mean that he concluded that the sole proximate cause of the unfortunate collision was the negligence of the plaintiffs in using their car’s dim headlights, rather than its bright or upper beam headlights, and that, in any event, the defendant railroad, and its co-defendant employees, were free of any causal negligence.
In order to avoid the jury’s verdicts, the defendants must be free of any appreciable causal negligence, since even assuming (but not deciding) that the plaintiffs were guilty of contributory negligence by reason of their use of the dim, rather than bright, lights, their contributory negligence is not a complete bar to their recovery in these premises. Section 768.06, F.S.A., supra.
Although at one time this Court may have been committed to the “standing train doctrine”, to the effect that one who drives headlong into a train standing across a highway cannot be heard to complain of negligence because of the absence of any special warning, since the position of the train itself is the warning, see Cline v. Powell, 1939, 141 Fla. 119, 192 So. 628, Clark v. Atlantic Coast Line R. Co., 1939, 141 Fla. 155, 192 So. 621, Kimball v. Atlantic Coast Line R. Co., 1938, 132 Fla. 235, 181 So. 533, we have since engrafted upon that rule qualifying criteria capable of removing its harshly strict application when the facts warrant jury consideration.
For example; in Atlantic Coast Line R. Co. v. Johnston, Fla.1954, 74 So.2d 689, we stated that the applicability of the “standing train doctrine” would depend upon these factors: (1) whether or not the crossing was hazardous; (2) visibility at the time and place of the accident; (3) location of the locomotive and flat cars at the time of the accident; and (4) condition of the approach to the crossing. See, also, Horton v. Louisville & N. R. Co., Fla. *531 1952, 61 So.2d 406, and Atlanta and St. Andrews Bay Ry. Co., Inc., v. Church, 5 Cir., 1954, 212 F.2d 688, in which latter case the federal courts applied Florida law in the premises.
So, in the Atlantic Coast Line R. Co. v. Johnston case, supra [74 So.2d 690], this Court said, in a factual situation not too different from the case at bar:
“The driver of the automobile was negligent in the manner in which he approached the crossing but the appellant was also negligent in the manner in which it guarded the crossing. It was operating a special train, it was dark’ and raining, the local environment was bad, the road was frequently • traveled and it had been blocked four minutes at 2:20 A.M. It is common knowledge that motorists now traverse the highways all times of the day and night. In rural areas where town meets the country, freight trains are not expected to block the highway at two o’clock in the morning, uncovered by a red light.
“Under such circumstances, if a highway is to be blocked, ordinary prudence would require that a flagman be placed so as to guard the crossing while it is blocked. If not possible to do this much, certainly flares or lights of some kind should have been placed to zvarn travelers. Such was the factual situation that confronted the jury and we are not prepared to say that the verdict was erroneous.”
Applying the rationale of the Atlantic Coast Line R. Co. v. Johnston case, supra, to the facts involved in this action, it is clear that the jury could have believed testimony and could have accepted evidence tending to prove that, under the facts of this case, the mere prsence of the gondola car on the railroad crossing was not warning enough to these plaintiffs. Nor are we prepared to hold, as a matter of law, that the use by the plaintiffs in these premises of their automobile’s dim lights, rather than its bright or upper beam lights, was the sole proximate cause of the collision. Whether or not such use was reasonable under the circumstances was a proper question for the jury to decide, and we are of the opinion that the trial judge was in error in concluding that the jury’s decision must be superseded as a matter of law.
Whether or not the defendant railroad was guilty of causal negligence in failing to give warning of the standing gondola car, apart from its mere presence, under the facts of this case, was a proper question for the jury’s determination. Whether or not the plaintiffs were guilty of contributory negligence was also a proper matter for the jury’s consideration, and, since the jury was instructed on the applicability of our comparative negligence statute, Sec. 768.06, F.S.A., supra, the case was properly presented to the jury and its verdicts must stand.
Accordingly, the final judgment appealed from is reversed, with directions to the court below to enter judgment on the verdicts.
TERRELL, C. J., and HOBSON and THORNAL, JJ., concur.