THOMPSON, J.
William Webster appeals the summary judgments in favor of Florida Power Corporation (FPC) and Withlaeoochee Electric Incorporated (WEI). We reverse the judgment for FPC, but we affirm the judgment for WEI.
Webster sued CSX Transportation, FPC, and WEI for injuries he sustained as a result of a collision, allegedly caused by a defectively operating warning signal, between the vehicle that he was driving and a train moving across a railroad crossing. He alleged in his second amended complaint that the accident occurred on a drizzly, foggy, and dark morning. As Webster headed south and approached the tracks, he alleged, the railroad warning lights flashed. He alleged that the lights ceased flashing and that there were no gates or barriers blocking the intersection, or other indications of the presence of a train. Webster, thinking a train had passed through and beyond the intersection, continued forward. Webster further alleged that he did not see the train until he was within 30 feet of it, and, as he reached the tracks, the tram’s 90th ear struck his vehicle. There is an indication in the record that Webster was driving at 40-45 m.p.h., with headlights on, windshield wipers activated, and radio off. There was also evidence that the train’s lights were burning, that its horn was sounding, and that its bells were ringing. The trial court entered summary judgment for CSX, and that ruling was not appealed.
Next, the remaining defendants, FPC and WEI, moved for summary judgment. We find that the only record basis for the summary judgment in favor of FPC was the court’s application of the “standing train doctrine.” This doctrine has its roots in the premise that “one who drives headlong into a train standing across a highway cannot be heard to complain of negligence because of the absence of any special warning, since the position of the train itself is the warning.”[1] Hutton v. Atlantic Coast Line Railroad Co., 92 So.2d 528 (Fla.1957); see also Atlanta & St. Andrews Bay Ry. Co. v. Church, 212 F.2d 688 (5th Cir.1954) (reason for this rule is that train itself standing starkly on crossing is adequate warning).[2].
Also informing cases involving the standing train doctrine is the premise that, if a driver collides with a train standing on a track, the driver must have been negligent, and contributory negligence principles will bar recovery. See Trevino v. .Union Pacific R. Co., 916 F.2d 1230 (7th Cir.1990) (citing *464 Baltimore & O.R. Co. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 (1927) (Holmes, J.) (standard of conduct of an automobile driver is to stop and look, and, if the driver’s view of the track is obstructed, he should dismount from his automobile and walk to a point where he can see down the tracks)), overruled, Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149 (1934)[3]. It was recognized, however, that circumstances could give rise to liability on the part of a railroad. See Hutton (citing Atlantic Coast Line R. Co. v. Johnston, 74 So.2d 689 (Fla.1954); Horton v. Louisville & N.R. Co., 61 So.2d 406 (Fla.1952)). The circumstances include: (1) whether or not the crossing was hazardous; (2) visibility at the time and place of the accident; (3) location of the locomotive and flat cars at the time of the accident; and (4) condition of the approach to the crossing. Hutton.
Often, based on the doctrine of contributory negligence, cases brought by plaintiff motorists were disposed of summarily because the record showed at least some negligence on the part of the plaintiff. See Trevino. However, in Florida there were for many years statutes that applied the doctrine of comparative negligence to accidents involving the operation of a railroad, and that created a presumption of negligence on the part of the railroad.[4] Review of earlier Florida cases suggests that the statutes often may have been honored in the breach, but, in Goff v. Atlantic Coast Line R. Co., 53 So.2d 777 (Fla.1951), the court recognized that a strict application of the standing train doctrine would negate the comparative negligence statute.
The Goff court distinguished Brown v. Loftin, 154 Fla. 621, 18 So.2d 540 (Fla.1944) in which the Brown court stated:
The contention that the freight train was in motion when the accident occurred rather than at a stop cannot affect our previous holdings, because in either instance the train was being operated within the meaning of the statute. The absence of signboards, flashlight signals and other warning devices about the railroad crossing are insufficient reasons under the peculiar circumstances of this controversy. If a driver of an automobile fails or omits, when approaching a railroad crossing, to see or observe a moving freight train on a railroad crossing directly in front of the driver of the car and across the highway he is traveling, when the freight train consists of thirty or more cars, then a serious doubt arises and must exist as to whether or not lawfully required signs and signals at such crossing would prove efficacious.
It is contended that the painting of the lights of the automobile, except a narrow strip, in accordance with the dimout regulations, prevented the' driver from seeing the freight train then on the crossing. The answer to this contention is that greater care and caution should have been exercised by the driver at or near the crossing because of his inefficient lights.
Brown, 18 So.2d at 541. According to Goff, the distinction between its facts, and those of Brown, was that in Brown the train was fully occupying the crossing when the crossing came within the driver’s range of vision, whereas in Goff the automobile and the train approached the crossing simultaneously, and the train occupied the crossing only a few seconds before the impact. Goff, 53 So.2d. at 779. Because the facts surrounding the accident were in dispute, and because it could not be said the driver’s negligence was the sole proximate cause of the accident, the court reversed the summary judgment in favor of the railroad. Id.
Similarly, in Horton v. Louisville & N.R. Co., 61 So.2d 406 (Fla.1952), the court cited *465 former sections 768.05 and 768.06, and stated that an accident occurred and a person was killed, by reason of the operation of the train, and that it was the railroad’s duty to show that it exercised due care, the presumption being against the railroad. In Hutton, in which, as previously noted, the court laid out factors to be considered with respect to the standing train doctrine, the court stated:
Although at one time this Court may have been committed to the ‘standing train doctrine’, to the effect that one who drives headlong into a train standing across a highway cannot be heard to complain of negligence because of the absence of any special warning, since the position of the train itself is the warning ... we have since engrafted upon that rule qualifying criteria capable of removing its harshly strict application when the facts warrant jury consideration.
Id. at 530. The court also stated:
It is common knowledge that motorists now traverse the highways all times of the-day and night. In rural areas where town meets the country, freight trains are not expected to block the highway at two o’clock in the morning, uncovered by a red light.
Under such circumstances, if a highway is to be blocked, ordinary prudence would require that a flagman be placed so as to guard the crossing while it is blocked. If not possible to do this much, certainly flares or lights of some kind should have been placed to warn travelers. Such was the factual situation that confronted the jury and we are not prepared to say that the verdict was erroneous.
Id. at 531 (quoting Johnston, 74 So.2d at 689) (emphasis in Hutton). Because a jury could believe that “the mere presence of the gondola car on the railroad crossing was not warning enough to these plaintiffs”, the Hutton court reversed the judgment notwithstanding the verdicts in favor of the defendant railroad.
In the instant case, the trial court entered judgment for FPC based on Massey v. Seaboard Air Line Railroad Co., 132 So.2d 469 (Fla. 2d DCA 1961), cert. discharged, 142 So.2d 296 (Fla.1962), in which the court applied Brown instead of Hutton, Goff, and Horton. The deceased’s father alleged that the deceased had been a passenger in an automobile that collided with the 110th, 111th, and 112th ears of a long freight train. It was further alleged that the road did not reflect light, that the railroad’s warning signs were inadequate, that the night was dark and foggy, and that, although the Department of Transportation had asked the railroad to install automatic flashing signals, the railroad had failed to do so.
On appeal, the court stated that, regarding the railroad’s negligence, it was necessary only to note that the automobile had left a 96-foot skid mark. The court stated without elaboration that the presumption of negligence on the part of the railroad had been rebutted. Further, distinguishing Hutton, Goff, and Horton, the court stated:
None of the cases cited by plaintiff however, involve an accident with the particular facts we have here, namely, a running train and the plaintiff striking same at a point indicating that the train had been running across a given point for three or four minutes. In such a case the moving train is a more obvious warning to vehicles on the highway than a train standing across the road. We are compelled to agree with the lower court that this ease falls squarely within the rule of [Brown ].
Thus, Massey held that the standing train doctrine had been modified with respect to standing (i.e., stationary) trains, but that the standing train doctrine had not been modified with respect to trains in motion. We believe that Massey failed to recognize the evolution in the law and Hutton’s clear repudiation of a hard and fast rule. Further, the distinction made in Massey between a moving train and a stationary train is untenable because the Brown court held it to be a distinction without a difference. See Brown, 154 Fla. 621, 18 So.2d 540 at 541 (contention that the freight train was in motion when the accident occurred rather than at a stop cannot affect our previous holdings). Because we disagree with Massey, we reverse the judgment in favor of FPC and remand for further proceedings. See Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
*466 We affirm the judgment in favor of WEI because it was unrebutted that the power it supplied to the railroad crossing area was not interrupted at the time of the accident.
AFFIRMED in part, REVERSED in part, and REMANDED.
GRIFFIN, C.J. and W. SHARP, J., concur.

. We note that in applying Oklahoma’s "occupied [railroad] crossing” rule, the tenth circuit stated, "This appeal unlooses a legal dinosaur, which, once out, tramples twentieth century negligence law and then lumbers back to its dark cave only to await another victim.” Hurst v. Union Pacific Railroad, 958 F.2d 1002 (10th Cir.1992). "The jurisprudential fossils it leaves behind are truly daunting.” Id.

. "[T]he rule that a train on a crossing ‘gives notice of its presence’ is a 'cliche' which has no logic other than that ‘the victim is bent on suicide' ”. Sargent v. Southern Pac. Transp. Co., 264 Or. 435, 504 P.2d 729 (1972) (Tongue J. dissenting) (quoting Green, Traffic Victims: Tort Law and Insurance 49 (1958)). The rule “illustrates how compulsive a cliche can become in controlling the thought of the most intelligent minds.” Id. (quoting Green).

. In Pokora, Justice Cardozo pointed out that, having ascertained -that the track was clear, by the time the driver got back into his automobile and advanced to the track, a train could have emerged out of obscurity to descend upon him. 292 U.S. At 104-105. He also states, "Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life.” Id. (quoted in Hurst).

. The statutes were last codified as sections 768.05 and 786.06, and were repealed in 1983. The statutes were derived from: sections 7051 and 7052, Comp. Gen Laws (1927); sections 4964 and 4965, Rev. Gen. St. (1920); sections 3148 and 3149, Gen. St. (1906); chapter 4071 sections 1, and 2, Laws (1891); and chapter 3744 sections 1 and 2, Laws (1887).