**John CHANEY and Lucretta Chaney,**
**Appellants,**

**v.**

**WABASH RAILROAD COMPANY,**
**Respondent.**

**No. 52431.**

Supreme Court of Missouri,
Division No. 2.

Dec. 11, 1967.

Motion for Rehearing or for Transfer to
Court En Banc Denied Jan. 8, 1968.

Charles N. Bono, Smith, Schlozman &
Shapiro, Robert G. Smith, Joseph R.

Schlozman, Lee S. Shapiro, Kansas City, for appellants.

James H. Ottman, John C. Dods, Kansas City, for defendant-appellant. Shook, Hardy, Ottman, Mitchell & Bacon, Kansas City, of counsel.

BARRETT, Commissioner.

This action in two counts is to recover damages for the plaintiff husband's personal injuries and the wife's loss of "services, society, association and companionship." The husband, John Chaney, was injured on December 7, 1962, when the 1961 Pontiac sedan he was driving on Highways 6 and 13 in Daviess County ran into an empty cattle car stopped on the highway crossing. A jury awarded the husband $75,000.00 damages and the wife $1000.00. In its alternative motion for judgment or for a new trial the Wabash Railroad set forth twenty-seven specifications of error together with numerous specific subdivisions of alleged error. The court instead of basing its ruling on the alternative motion made the order that "the motion of the defendant to set aside the verdict and the judgment entered thereon for the plaintiffs, and for judgment for the defendant in accordance with defendant's motion for directed verdict, is granted on the grounds stated in Paragraphs 1, 2 and 3 of defendant's motion for directed verdict at the close of all the evidence, and judgment for the defendant may be entered accordingly." The court further ordered "in the event that judgment for the defendant to be entered herein is reversed, the alternative motion of the defendant for a new trial is denied." The first three grounds of the motion for a directed verdict are that (1) "The evidence failed to establish a claim upon which relief can be granted against this defendant." (2) "The evidence failed to establish that the defendant was negligent in any of the particulars alleged in Plaintiffs' Second Amended Petition" and (3) "The evidence established that plaintiff John Chaney was guilty of contributory negligence as a matter of law." Upon the entry of the noted order both the plaintiffs, Mr. and Mrs. Chaney, and the defendant, Wabash Railroad, filed notices of appeal and in their respective capacities the parties have filed five briefs in this court in which they raise numerous questions concerning the rejection and admissibility of testimony, excessiveness of the verdict and the correctness of instructions. Nevertheless, the parties appear to tacitly concede that the truly meritorious question is whether from the circumstances a jury could reasonably find that the railroad was negligent, particularly whether under all the proof it was a permissible inference that for any reason the railroad crossing was "particularly dangerous" (Coffman v. St. Louis-San Francisco Ry. Co., Mo., 378 S.W.2d 583, 586) as that term has been defined in numerous Missouri cases. Annotation 84 A.L.R.2d 813. And at the outset several cases cited by the parties must be put aside, for example: "Cases involving injury as the result of a collision between a road vehicle and a moving train have been excluded even where it appeared that the train was moving very slowly, since even slight movement is apt to call a motorist's attention to the fact that the crossing is obstructed." 84 A.L.R.2d 1.c. 819. In short, the case is to be strictly confined to the situation presented, railroad cars standing on a highway crossing collided with by an automobile.

The plaintiff, John Chaney, age 41, lives in Overland Park, Kansas, southwest of Kansas City, Missouri. On December 7, 1962, Chaney's sister-in-law called from the Kansas City Airport at 1 a. m., and being unable to rent an automobile, asked him to drive her to her father-in-law's home three miles east of Jamesport, Missouri. Chaney drove to Kansas City, picked up his sister-in-law and drove up Highway 69 to Cameron to an intersection with Highway 6 and then to Gallatin and to Jamesport. He stopped at their destination long enough for a cup of coffee and was on the return trip over the same route home at 5 a. m.,

and approached the intersection of Highways 6 and 13 two or three miles east of Gallatin at a speed of 50 to 55 miles an hour. While Chaney says that he had not previously been over this particular highway at night, other than on the trip to Jamesport four hours earlier, he had traveled over this route in the daylight hours two to four times a year over a period of twenty years and knew that there were railroad tracks across the highway in the vicinity of Gallatin but he "thought that was a siding for this grain elevator." He said, "I wasn't familiar with the crossing. I was just familiar with the general vicinity." It was cloudy and dark but there was no moisture and at one point in his testimony Chaney said that there was nothing to distract his attention and there was no other motor vehicular traffic in either direction. While the degree is not given Highways 6 and 13 approach the railroad tracks on a long arc and 500 feet east of the crossing there is a bridge and beyond the bridge, 300 feet from the crossing, there is a reflectorized State Highway Department sign noting approach to a railroad crossing. Admittedly there were no railroad signs or signals other than the usual wooden crossbucks and the one facing Chaney was not reflectorized. And while the Wabash Railroad's mixed train (the fifth car from the engine was a coach thought to be lighted) had occupied the crossing for several minutes no members of the train crew had been assigned the duty of looking out for or "flagging" traffic and no member of the train crew was at or on the crossing. Chaney says that with his lights on "high beam" he saw the bridge and after crossing it saw "several signs," some "reflective," but he did not "recall" seeing any sign warning of a railroad crossing and he did not see the train on the crossing, particularly the tenth car in the consist, an empty stock car directly across the highway. He says that the first and only thing he saw, aside from the bridge and signs, "was the wheels of the train." When he saw the wheels of the boxcar, 180 to 200 feet from the crossing

and traveling at a speed of 50 to 55 miles an hour he immediately applied his brakes but nevertheless "slid down the highway into the train." In this connection he says that "it takes a little time" and that by the time the brakes took effect he was a little less than 180 feet from the train. It was his opinion that under the existing conditions he could have stopped his Pontiac (in excellent mechanical condition) in "a little over 200 feet" and he had no judgment of its speed at the moment of impact. He testified that his automobile left skid marks on the pavement for a distance of 151 feet. He said that fifty feet after his automobile crossed the bridge there was nothing to prevent his seeing the train other than "the curve of the road" and because of that "you can't possibly see it."

Highways 6 and 13 approach Gallatin on a wide arc from the northeast to the southwest and finally almost directly south. The main line of the Wabash, and this was the main line, crosses this section of Daviess County and the Gallatin area from northwest to southeast intersecting and crossing Highway 6–13 on a wide angle, obliquely, perhaps at an obtuse angle. In approaching the crossing Chaney was traveling in a westerly direction. While he said that the railroad crossing could not be seen by reason of the curve in the highway, he in fact saw the wheels of the boxcar while 180 feet distant and his witness who photographed and measured the distances said that after leaving the bridge there was "260 feet of straightaway" approaching the crossing. Photographs introduced by both parties, taken east of the highway department's advance warning sign (300 feet east of the crossing), reveal that the highway in this span is slightly upgrade but in almost a straight line. One of the plaintiff's witnesses—the railroad offered no evidence other than parts of the plaintiff's deposition—said that he had personally examined 300 of the "nine hundred or so" railroad crossings in Missouri. This witness, a highway department employee with the title of "Assistant Utilities En-

gineer," took one of the photographs from just east of the advance warning sign and this photograph indisputably reveals, as the witness testified, that "the highway is level for some distance in both directions from the crossing—relative, not considering a foot or so variation, but generally level." He testified that the railroad crossing "was plainly visible from the location of the advance warning signs" (300 feet).

■ The plaintiffs list sixteen "conditions" or "summary of facts" which they say constitutes sufficient and substantial evidence of "an unusually dangerous or extraordinarily hazardous railroad crossing." For example, they point to the evidence which shows that there were trees on the right side of the highway and brush and weeds along the right-of-way east of and up to the crossing. They list as facts supporting the issue that the crossing is 1–¾ miles east of Gallatin, that the speed limit is 65 miles an hour and that Highway 6 at this point is heavily traveled. They say that beginning 500 feet east of the crossing the highway "runs downhill" to a point 100 feet east of the crossing and then begins "to level out and assume a very slight upgrade to the point of the crossing." In the circumstances of some cases these particular facts or conditions, singly or in combination, would be of persuasive force upon the issue of an unusually dangerous crossing. But in all instances the issue of hazardous crossing must of necessity be determined in the context of the particular occurrence, here a train of cars stationary on the crossing and it is not as if the train from the south was approaching the crossing and the motorist's view of the train and tracks was obscured by weeds and brush. Homan v. Missouri Pacific R. Co., 334 Mo. 61, 64 S.W.2d 617. The mere downward slope of the highway, the dark color of the surface of the roadway over the crossing, here blacktop, and the drab color of the boxcar are not in themselves such circumstances as to render an occupied crossing unusually hazardous within the meaning of the rule relied upon as creating liability. State ex rel. Thompson v. Cave, 358 Mo. 414, 215 S.W.2d 435; Albertson v. Wabash R. Co., 363 Mo. 696, 253 S.W.2d 184, 187. When the particular circumstances create "an illusion of safety" to the motorist, as in Albertson v. Wabash R. Co., supra, an unusually hazardous crossing is a permissible finding and of course there is liability. On the other hand, "illusion of safety" is not a term of art as the railroad implies, the question is whether "for any reason" the railroad crossing is particularly dangerous. Coffman v. St. Louis-San Francisco R. Co., supra. The determinative factors are cogently set forth in that case and need not be repeated here, it is sufficient to say that in that case the physical construction of the railroad track and the physical conditions generally were of great significance. In this case Mr. Chaney did not rely on any illusion of safety in the physical surroundings, nor did atmospheric conditions or other traffic (Allinson v. Missouri-Kansas-Texas R. Co., Mo.App., 347 S.W.2d 902) enter into his difficulties, he simply did not see the train on the crossing until he was but 180 feet away; "if the evidence shows that the train could have been seen in time by a traveler exercising due care and caution under the circumstances, then the mere fact that a particular traveler did not himself see it is, as defendant contends, on evidence of actionable negligence on the part of the railroad company in failing to have given warning of its presence on the crossing." Rowe v. Henwood, Mo.App., 207 S.W.2d 829, 833.

■ This is not to say that the facts or factors listed here by the plaintiffs are not present and are not relevant and as was said in the Coffman case, 378 S.W.2d l.c. 592, "it would be erroneous for us, in reviewing the question of the submissibility of plaintiff's case against the railroad company, to become decisively preoccupied with particular sight distances from particular points of view of the driver of the automobile as the northbound vehicle ap-

proached the crossing." It is to say, however, that in the circumstances relied on by Mr. Chaney this particular crossing was not so unusually dangerous that the railroad should have anticipated "that the mere presence of the train standing thereon will not adequately warn users of the highway." 84 A.L.R.2d 1.c. 855. While in no event would the plaintiffs be conclusively bound by the testimony of their highway department witness his evidence illustrates precisely the issue involved here and the weakness of the plaintiffs' proof and reliance. He said that the highway over this crossing was "a little bit narrow" but "We would classify it as a satisfactory crossing. * * you could see the crossing adequately from either direction from a distance beyond our advance warning sign. * * * I think there was adequate stopping sight distance. In other words, if a driver comes from the east, going from the east to the west, if there was any obstruction at the crossing, that there was adequate sight distance for him to stop. * * * I think sight distance, day or night, bears no particular relationship to sight distance. * * * We make no distinction between day and night." In short, while there may be danger in all railroad tracks crossing public highways, the essence of the proof and reliance here is upon a common conventional railroad-highway crossing, one of several hundred, and the circumstances adduced do not meet the test of a "particularly dangerous" crossing as demonstrated by the Coffman and Albertson cases and the consequence is that the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.

PER CURIAM.

On motion for rehearing appellants Chaney state that the court's opinion did not expressly rule on the admissibility of certain evidence excluded by the trial court. Even considering that testimony, the admissibility of which we need not rule, the appellants Chaney did not make a submissible case and their motion for a rehearing or, in the alternative, to transfer to the court en banc is overruled.