LOWDEN et al. v. BOWLES et ux.

No. 29514.   Oct. 1, 1940.

*105 P. 2d 1061.*

W. R. Bleakmore, W. L. Farmer, John Barry, and Robert E. Lee, all of Oklahoma City, for plaintiffs in error.

Harley Ivy, of Waurika, Warren B. Phillips, of Corpus Christi, Tex., Robert Williamson, of Tyler, Tex., Travis Smith, of Denver City, Tex., and Nat Gentry, Jr., of Tyler, Tex., for defendants in error.

BAYLESS, C. J.  Henry Bowles and wife, parents of Margie Bowles, deceased, brought an action in the district court of Jefferson county against Frank O. Lowden et al., trustees of the

estate of Chicago, R. I. & P. Railway Company, a corporation, to recover damages for the death of their daughter, alleged to have resulted from the negligence of the company. The company appeals from a verdict of the jury in favor of plaintiffs.

Nine young people were in a 1933 Chevrolet sedan, and stopped at a filling station in Waurika for gasoline. The driver of the car left his engine running while being served, his reason therefor being that the engine was hard to start. When the car had been serviced, the driver drove east and traveled at a rate of speed estimated by various witnesses to be from 30 to 60 miles per hour. About 800 or 900 feet east of the filling station was a crossing of the defendants' tracks and the highway, and there was a freight train obstructing the crossing. The car was driven into the side of, and under, one of the freight cars, and Margie Bowles was killed. This happened about 10:30 or 11:00 o'clock p. m.

It is alleged that the defendants were negligent in allowing the train to obstruct the crossing, and in not having signals, lights, warning devices, or employees to warn the public using the highway of the presence of the train.

Since this case was appealed, this court has had occasion to give consideration to the liability of a railway company for injuries to persons injured as the result of automobiles colliding with a standing train at a highway crossing. Kurn v. Jones, 187 Okla. 93, 101 P. 2d 242.

The rule stated therein is:

"To charge railroad with negligence in leaving train at night across highway without lights or other signals to disclose its presence, motorist injured must show that trainmen, exercising reasonable care, should know that, because of darkness, cars were such obstruction that people traveling in automobiles properly equipped with lights and carefully operated at reasonable rate of speed would be likely to come into collision with them.

"The burden in such case is upon plaintiff to establish a set of circumstances that would warrant the jury's consideration of the question of reasonable care on the part of the trainmen. If the court is of the opinion that reasonable men might differ as to whether the trainmen in the exercise of reasonable care might have anticipated the accident, then the jury should be allowed to decide the questions of primary negligence and of proximate cause."

See the annotation in 99 A.L.R. 1454, and the decisions discussed.

The plaintiffs endeavored to show a set of circumstances in this instance that would cause the employees of the defendants to anticipate, as reasonable men, that the driver of an automobile properly equipped and carefully operated approaching this crossing while it was obstructed by this train would be likely to come into a collision with the train. It is admitted that none of the trainmen were acting as lookouts, and other than the presence of the train and some stationary wood crossing warning signs there were no other warning devices.

The evidence, including photographs, indicates that the street approaching the crossing from the west was fairly level, but the level of the railroad tracks was somewhat higher than that of the street or surrounding terrain, the estimates of the difference in levels varying up to six feet. There is no evidence or contention that near-by structures in any wise obscured the view of the crossing to passing motorists.

The evidence shows that it was a cold, dark night, and it was "foggy in low places." There is no evidence that there was fog at or around the crossing, and the photographs do not raise an inference that the crossing was a low place wherein fog could gather.

There is evidence that automobiles were standing on the east side of the train, headed west, because of the train obstructing the crossing; that their lights were burning; that the occupants of the

automobile saw those lights between the bottom of the freight car and the tracks (because of the difference in the levels of the street and railway tracks) and believed the automobiles were actually moving toward their automobile, and they did not see the superstructure of the freight car, and therefore did not see the particular freight car nor the standing train. It is asserted that this constituted a deceptive condition and led up to the collision. Plaintiffs rely upon Lawrence v. Southern Ry. Co., 169 S. C. 1, 167 S. E. 839, where a similar plea of negligence was made, but we do not find that case helpful because the duty of a railroad company with respect to warning the traveling public of its train standing on a public crossing is established by statute, and the violation of this statute by the company was the controlling feature of the decision in that case.

We do not think the elevation of the tracks above the surrounding levels nor the relation of the lights of the automobiles on the opposite sides of the standing train, even if deceptive to the driver and occupants of this automobile, are sufficient as a matter of law to cast upon the employees of the defendants, exercising reasonable care, the duty to anticipate that the traveling public would be deceived and led to collide with the standing train. See Mabray v. U. P. Ry. Co. (D. C. Colo. 1933) 5 Fed. Supp. 397. There it was asserted that a cattle car standing on a crossing permitted the lights of cars to shine through and mislead the driver of the automobile. This contention was rejected. It seems to us that if the employees of the defendants must take such things as this into consideration, there is no possible arrangement that could be made at crossings that would relieve them of the duty of warning the traveling public in all instances.

Certain witnesses for the plaintiffs were permitted to testify over the objections of the defendants that they considered a train difficult to see on this crossing at nights. We think this was inadmissible. It would have been proper for them to describe the crossing and its surroundings to establish this fact, but we feel that it was an invasion of the province of the jury to permit non-expert witnesses to express conclusions upon the very fact that the jury would be called upon to determine from all of the evidence. The simple conclusions of witnesses on this point are not evidence.

The town officers who were called testified that they were traveling toward the scene of the wreck (without knowledge of the exact location or the cause of the wreck) at a speed of about 45 miles per hour, and did not see the train until they were so close upon it the driver had to turn alongside the train to avoid striking it. That is not driving with reasonable care within the contemplation of the law that the railway employees must anticipate. The officer driving did see the train and avoided striking it, traveling at the rate of speed admitted and certainly under some stress.

We do not believe any of this evidence is of the character to justify submitting to a jury the issue of reasonable care. The question of negligence or no negligence from the evidence introduced is a matter of law in the first instance in every case where a demurrer is filed. City of Tulsa v. Harman, 148 Okla. 117, 299 P. 462.

The judgment is reversed, and the cause is remanded, with directions to take further proceedings not inconsistent with the views expressed herein.

OSBORN, GIBSON, HURST, and DAVISON, JJ., concur.