ATCHISON, T. & S. F. RY. CO. v. TEMPLAR.

No. 33866.   March 27, 1951.
Rehearing Denied May 1, 1951.

Application for Leave to File Second Petition for Rehearing Denied May 15, 1951.

*230 P. 2d 907.*

Rainey, Flynn, Green & Anderson and M. M. Gibbens, Oklahoma City, for plaintiff in error.

Homer Bishop, Seminole, and John L. Goode and Mark Goode, Shawnee, for defendant in error.

LUTTRELL, V.C.J. This is an action for wrongful death, brought by George W. Templar, administrator of the estate of Loran Earl Kesler, deceased, against the Atchison, Topeka & Santa Fe Railway Company. The petition contained two counts or causes of action, the first for wrongful death, and the second for funeral expenses and damages for conscious pain and suffering. Defendant answered by general denial, and pleaded that the deceased was guilty of negligence and contributory negligence, which were the sole and proximate cause of the injury and death of the deceased. The trial court overruled the motion for defendant for directed verdict at the close of all the evidence, and submitted the cause to a jury, which returned a verdict for plaintiff on the first cause of action. Defendant appeals.

The sole contention of defendant on appeal is that the evidence was insufficient to establish primary negligence on the part of the defendant as the proximate cause of the death of the deceased, and that therefore the trial court erred in overruling its motion for directed verdict.

From the record it appears that on June 20, 1947, at about 9:45 p.m., the deceased, driving a truck, was traveling south on State Highway No. 81 at or near the outskirts of the city of Medford. The highway runs in a northerly and southerly direction, and just outside of the city of Medford crosses the main line of defendant, which runs in an easterly and westerly direction. At the time of the collision a freight train of defendant blocked the crossing, and was moving slowly forward at an estimated speed of three or four miles per hour. The truck driven by deceased crashed into a loaded wheat car some 15 or 16 cars back of the engine, which collision resulted in the death of the deceased. The night was cloudy and dark and it had rained the day before. The highway is level, but curves just before reaching the railroad tracks. Some 344 feet north of the tracks on the west side of the road, or the right-hand side of one driving south on the highway, the highway department maintained a sign, yellow in color set with glass facets, warning approaching travelers of the railroad crossing. Some 200 feet north of the crossing there was a filling station set back some 35 or 40 feet from the west edge of the pavement, and in front of the station was a large floodlight and sign advertising gasoline. The driveway of this station was composed of red clay and gravel. Some 106 feet north of the tracks on the west side of the pavement was a "slow" sign. On the east side of the pavement and close to the tracks was the regulation railroad crossing sign maintained by the defendant. On the south side of the tracks was a wig-wag which, however, was concealed from an approaching traveler when the cross-

ing was blocked by a train for the reason that the boxcars were higher than the wig-wag itself. There was evidence produced by plaintiff tending to show that the view of one approaching the crossing was obstructed by weeds and cane, or a cane patch, but from photographs introduced in evidence it appears that for at least 100 feet north of the railroad tracks, an approaching traveler had a clear and unobstructed view of the crossing itself.

Deceased was 19 years of age. He was at the time of his death driving a truck belonging to one Watts, the owner of a truck line, having theretofore gone through a training period and been pronounced qualified as a truck driver by Watts. He was accompanied by another truck driver named Campbell, whom he had relieved at Caldwell, Kansas. Campbell, who was not killed in the accident, testified that at the time of the collision the truck was traveling some 15 miles per hour, and that he, Campbell, did not see the boxcar across the highway until they were within some 15 feet of the intersection. Witnesses for the defendant who observed the accident, including one disinterested witness, placed the speed of the truck as it approached the intersection at approximately 40 miles per hour. The supervisor of Watts Trucking Lines testified that the headlights and brakes on the truck were in good working order, and that at a speed of 15 miles per hour the truck could be stopped in less than 25 feet.

Defendant in this court invokes the rule announced in Fleming v. Loch, 200 Okla. 448, 195 P. 2d 942; Thompson v. Carter, 192 Okla. 579, 137 P. 2d 956; Lowden v. Bowles, 188 Okla. 35, 105 P. 2d 1061, and other decisions of this court, holding that if a train is on a crossing, whether moving or standing still, that in itself is sufficient notice to a driver of a vehicle on the highway of such obstruction, and that the driver of an approaching vehicle is under the statutory duty to so drive

his vehicle that he can stop before he reaches the crossing. In these cases we held that the rule therein announced ordinarily obtained, but in Thompson v. Carter, supra, we said that it obtained in the absence of unusual circumstances which rendered the crossing extrahazardous. Defendant urges that the evidence does not show any circumstances or facts rendering the crossing extrahazardous, or which would relieve deceased of the duty of driving carefully, and that the defendant and its employees, under the circumstances shown by the evidence, were not required to anticipate or foresee, in the exercise of ordinary and reasonable care, that one approaching the crossing from the north, driving at a reasonably prudent rate of speed as required by law, would fail to see the cars blocking the crossing. It contends that under these circumstances there was no negligence on its part, and that the want of care on the part of the deceased was the proximate cause of his death. We think this contention must be sustained.

Plaintiff concedes the rule announced in the cases above cited, that a train blocking the crossing is in itself notice and warning to approaching passengers, but urges that in all these cases it was shown that the driver knew of the existence of the railroad crossing, while in the instant case the evidence showed that the deceased had never traveled this road before and was not apprised of the existence of the crossing. However, if ignorance of the existence of the crossing on the part of a driver approaching the crossing is made an exception to the rule, the rule is thereby nullified or abrogated, since the railway company would never know when a stranger or one not familiar with the existence of the crossing would approach, so that the railway company would at all times and under all conditions be required to anticipate and guard against the approach of such driver.

Plaintiff also produced a number of witnesses who testified that because of existing conditions the sign maintained by the highway department was not visible to an approaching motorist on the night of the collision; that the cross-arm sign maintained by the railway company was so placed that it could not be seen by the driver of a vehicle approaching from the north at night, and that the lights from the filling station temporarily blinded, or blacked out, the driver of a vehicle approaching from the north, so that after he passed the filling station and out of the glare of its bright lights he was temporarily blinded. Plaintiff urges that this evidence, together with the fact that the highway curved where it approached the crossing, made the crossing extrahazardous, so that the rule in the cases above cited did not apply. We are unable to agree with this contention.

In Thompson v. Carter, supra, the evidence showed that there was a slope in the highway, and a slight curve just before its intersection with the railroad crossing, and that by reason of the down grade and curve, and the lights of the town immediately across the railroad tracks, it was particularly difficult to discern low and dark colored cars, causing the drivers of approaching cars to believe that the highway was unobstructed. In that case we held that such facts did not prevent the application of the rule, or render the crossing extrahazardous.

In Doty v. Southern Pacific Co., 59 Ariz. 449, 129 P. 2d 991, the evidence showed that the highway crossed the railroad on a curve and dipped so that the lights of an approaching automobile did not render the crossing visible at all times to motorists at night. In that case, as in the instant case, the evidence showed that the driver of the vehicle did not know of the existence of the railroad crossing. In holding that those circumstances did not render the crossing unusually hazardous, or re-

lieve the driver of a vehicle approaching a crossing of driving at such rate of speed that he could stop his car upon observing the obstruction of a crossing by the train, the court stated that the very condition which plaintiffs claimed prevented them from seeing the train in time to stop imposed upon them the duty of so conducting themselves that they could have stopped in time to avoid a collision.

If, as contended by plaintiff, the glare of the lights of the filling station rendered a driver temporarily unable to see after he passed the station, we think it was the duty of such driver to proceed with unusual caution until the highway before him was plainly visible, and that the railway company was not required to anticipate that the driver of such vehicle might blindly pursue his way so as to crash into an obstruction which should be visible to one in full possession of his faculties.

Plaintiff also produced a number of witnesses who testified that because of gravel and mud on the surface of the highway it absorbed much of the lights of the headlights of the truck driven by deceased, which were testified to have been in good condition at the time of the accident, and also that the dark red color of the boxcar struck by the truck absorbed the light from the headlights so as to cause it to be almost invisible.

In Lowden v. Bowles, supra, we held that evidence of this nature by non-expert witnesses was inadmissible, in that it permitted them to express conclusions upon the facts which the jury would be called upon to determine from all the evidence. In rebutting or attempting to rebut this testimony, defendant introduced a disinterested witness, deputy sheriff of Grant county, who testified that, while driving a car equipped with ordinary headlights, he had had occasion to approach the crossing at night a number of times when it was blocked by trains, and that cars upon the track were visible from 70 to 80 yards away.

Plaintiff, in insisting that the signs maintained at the crossing by the railway company were insufficient, calls attention to Kurn v. Campbell, 188 Okla. 636, 112 P. 2d 386; Kurn v. Manley, 194 Okla. 574, 153 P. 2d 623, and other similar cases. But in none of these cases, except Chicago, R. I. & P. Ry. Co. v. Richerson, 185 Okla. 560, 94 P. 2d 934, was the crossing obstructed by a train at the time the collision occurred, and in that case the evidence was conflicting as to whether the train occupied the crossing at the time the plaintiff struck it, or whether it arrived at the crossing such a short time before plaintiff arrived that plaintiff was unable to stop and avoid hitting it. We are unable to see the application of these cases to the instant case, in view of the rule announced in the cases relied upon by defendant.

Plaintiff also calls attention to Taylor v. Ray, 177 Okla. 18, 56 P. 2d 376, holding that the rule that a driver on the highway must so proceed that he can stop his vehicle within the assured clear distance ahead varies in its application to various situations or circumstances, and does not mean that the driver must at all times be held to proceed at his own peril against dangers which are not expected or anticipated by him. Study of that case, however, discloses that the language used was in connection with an unlawful use of the highway, the court stating that the phrase "assured clear distance ahead" contemplated only a lawful use of the highway. In the instant case it is not disputed that the defendant had a lawful right to temporarily block the highway at this crossing.

A careful study of the record and the authorities convinces us that the rule contended for by defendant applies, and that negligence on the part of defendant was not the proximate cause of the death of the deceased. It

follows that the trial court erred in overruling the motion of defendant for a directed verdict.

Reversed, with directions to render judgment for defendant.