Walter E. DAVIS, Appellant,

v.

**BURLINGTON NORTHERN, INC., Appellee.**

No. 80–1458.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted July 14, 1981.

Decided Nov. 5, 1981.

Jerry Earl Benson of Morgan, Morgan & Benson, Watonga, Okl., for appellant.

Grey W. Satterfield, Oklahoma City, Okl., for appellee.

Before DOYLE and McKAY, Circuit Judges, and CHILSON *, District Judge.

CHILSON, District Judge.

## PRELIMINARY STATEMENT

In the early morning of September 30, 1977, plaintiff, while driving his car on a road between Watonga and Longdale, Oklahoma, struck the side of a freight train owned and operated by the defendant.

Plaintiff commenced an action in a state court of Oklahoma to recover damages resulting from the collision.

Defendant removed the action from the state court to the United States District Court for the Western District of Oklahoma on the ground of diversity of citizenship and filed a motion for summary judgment of dismissal. The trial court granted the motion and plaintiff appealed.

* Honorable Hatfield Chilson of the United States District Court for the District of Colorado, sitting by designation.

From a review of the depositions and other documents filed in support of and in opposition to the motion, the Court finds no genuine issue as to any material fact and determines the trial court properly granted the motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.

## UNCONTROVERTED FACTS

About 2:00 A.M. on the morning of September 30, 1977, the plaintiff left Watonga to drive one Bowers to Longdale, located some miles westerly of Watonga. The defendant's railroad tracks crossed the road at a point between the two towns. Both the plaintiff and his passenger had traveled the road before and knew of the existence of the railroad crossing.

On the way from Watonga to the crossing, plaintiff encountered pockets of fog and at such times, he slowed the speed of the car from 50 to 55 miles per hour to 30 to 35 miles per hour. As the plaintiff approached the crossing, he was driving 50 to 55 miles per hour.

When plaintiff was about 150 feet from the crossing, he saw something moving in the roadway. He applied his brakes and the car skidded from that point until it struck the side of a freight train which was traveling in a northerly direction to its ultimate destination at Southard, Oklahoma, located some distance north of the crossing.

The train had stopped south of the crossing to pick up six hopper cars that were on a side track in the vicinity of the railroad crossing. To accomplish this, the engine was uncoupled from the train, proceeded northerly across the crossing to the siding, coupled on to the hopper cars, moved them to the main track, backed the hopper cars across the crossing, and coupled them to the original train. This pickup operation took five to ten minutes.

When the coupling was completed, the train then resumed its journey in a northerly direction toward Southard.

At the time of the collision, the train was moving from one to four miles per hour and the engine had proceeded from its position in the crossing to a point approximately 120 to 150 feet north of the crossing. The plaintiff's car struck the fourth car behind the engine.

The plaintiff testified that as he approached the crossing, there was some mist and fog in the air, that he did not have his windshield wipers in operation, that he heard no train bell or whistle, and saw no train lights. The train crew testified that at all times the locomotive head light was in operation and at appropriate times the whistle was sounded.

The approach to the crossing from the east was obscured by a hill about one-half to three-quarter miles east of the crossing. From the bottom of the hill to the crossing, the terrain was flat, the view of the crossing was unobstructed, but there was grass, shrubs, and trees on both sides of the road near the railroad crossing.

There was a "crossbuck" railroad sign on the west side of the tracks and a railroad crossing sign located 150 to 200 feet east of the crossing.

## APPLICABLE LAW

Since the incident occurred in the State of Oklahoma, Oklahoma law governs.

The Oklahoma Supreme Court in numerous decisions has determined the applicable law in cases where a car ran into the side of a train which was occupying a railroad crossing.

In *Smoot v. Chicago, Rock Island and Pacific Railroad Co.,* 378 F.2d 879 (10th Cir. 1967) this Court, in reviewing these decisions, stated:

In a number of cases the Oklahoma Supreme Court has denied recovery from a railroad company for injuries sustained when a train, while occupying an intersection, was struck by a motor vehicle. In *Oklahoma City-Ada-Atoka Ry. Co. v. Nickels,* 343 P.2d 1094, the court reviewed its decisions which had considered the liability of railroads for damages resulting from motor vehicles being driven into a train occupying a highway crossing and

followed *Kansas, Oklahoma & Gulf Ry. Co. v. Painter*, 333 P.2d 547, 548, where the general rule was stated:

> Ordinarily, the presence of a train or railway cars on a crossing, whether moving or stationary, is sufficient notice to a driver of a vehicle on the highway of such obstruction and, in the absence of unusual circumstances, the operating railway company is not under any duty to provide any other notice or warning.

See also, *Holt v. Thompson*, 10 Cir., 115 F.2d 1013; *Wm. A. Smith, Constr. Co. v. Brumley*, 10 Cir., 88 F.2d 803; *Cain v. St. Louis-San Francisco R. Co.*, Okl., 293 P.2d 355; *Atchison, T. & S.F. Ry. Co. v. Templar*, 204 Okl. 460, 230 P.2d 907; *Raley v. Thompson*, 203 Okl. 633, 225 P.2d 171; *Thompson v. Carter*, 192 Okl. 579, 137 P.2d 956; *Lowden v. Bowles*, 188 Okl. 35, 105 P.2d 1061. In all of the cases cited, the train had either stopped at the intersection or was moving slowly across it. With the exception of *Raley v. Thompson*, supra, which was decided on demurrer to the petition, they all were decided on the sufficiency of plaintiff's evidence following trial. *Smoot*, supra at 883.

As an exception to the foregoing general rule, this Court, in *Smoot*, pointed out that the train and Smoot's automobile converged upon the crossing almost simultaneously and stated:

> "It is quite clear that the train's occupancy prior to the collision was so brief that it could not have been effective as a warning of danger and therefore did not constitute legal notice thereof within the meaning of the Oklahoma decisions." Id. at 884.

In the instant case, the undisputed facts reveal that the train occupied the crossing during the coupling of the hopper cars to the original train; the train then proceeded northerly at one to four miles per hour and the plaintiff's car struck the fourth car behind the engine. The train's occupancy of the crossing in these circumstances invokes the general rule and not the exception as set forth in *Smoot*.

We note that the general rule adopted by *Smoot* is conditioned upon "the absence of unusual circumstances." We find no evidence of "unusual circumstances" which would prevent the application of the general rule. Darkness and inclement weather such as mist, rain, and fog are not "unusual circumstances" within the meaning of the rule, but are hazards common to those who travel upon the highways.

## COMPARATIVE NEGLIGENCE STATUTE

Plaintiff contends that the decisions of the Supreme Court of Oklahoma with respect to railroad crossing accidents that were rendered prior to the passage of the Oklahoma comparative negligence statute in 1973, are not applicable.

■ The statute applies only in those cases where both the defendant and the plaintiff are negligent.

The trial court, having correctly determined from the uncontroverted facts that the defendant was not guilty of negligence, the comparative negligence statute of the State of Oklahoma did not and does not affect the application of the rules set forth in *Smoot* and the Oklahoma cases cited therein to the facts in the instant case.

## OKLAHOMA STATUTES

Plaintiff alleges that the defendant did not comply with Title 66 O.S. § 126 requiring the sounding of a bell or whistle at least 80 rods from the railroad crossing and Title 66 O.S. § 95 requiring locomotives traveling at night be equipped with a headlight.

In *Fleming et al. v. Loch*, 200 Okl. 448, 195 P.2d 942 (1948), the Oklahoma Supreme Court held in effect that the violation of these statutes must have been a proximate cause of the accident in order to be a basis for recovery by the plaintiff.

A violation of the foregoing statutes would not and could not have been a proximate cause of the collision in the instant case.

The train stopped before reaching the crossing; the engine was uncoupled and entered the crossing to pick up the hopper cars. The collision did not occur until five to ten minutes thereafter. At the time that the engine first entered the crossing, the plaintiff was necessarily some miles east of the crossing.

The trial court's dismissal of this action is affirmed.