958 F.2d 1002
 Wanda G. HURST and William E. Hurst, Individually and as
Administrator of the Estate of Roy Everett Hurst,
a minor, Plaintiffs-Appellants,
v.
UNION PACIFIC RAILROAD COMPANY and L.B. Cox, Defendants-Appellees.
 No. 91-6091.
 United States Court of Appeals,
Tenth Circuit.
 March 10, 1992.
 
 Terry W. West (Bradley C. West with him on the briefs) of Terry W. West, Inc. & Associate, Shawnee, Okl., for plaintiffs-appellants.
 Tom L. Armstrong (Jeannie C. Henry and David S. Landers with him on the briefs), of Tom L. Armstrong & Associates, Tulsa, Okl., for defendants-appellees.
 Before JOHN P. MOORE and EBEL, Circuit Judges, and OWEN, District Judge.*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 This appeal unlooses a legal dinosaur, which, once out, tramples twentieth century negligence law and then lumbers back to its dark cave only to await another victim. The jurisprudential fossils it leaves behind are truly daunting as this case illustrates. However, absent any contra-indication from the Oklahoma Supreme Court, the dinosaur prevails.
 
 
 2
 At issue in this diversity action is Oklahoma's "occupied crossing rule" which governs the relationship between individuals traveling upon public roads that cross railroad tracks and railroads whose moving or stationary trains occupy grade crossings. The Union Pacific Railroad Company raised this rule as a complete defense in a motion for summary judgment precluding plaintiffs' suit for wrongful death. Wanda and William Hurst, individually and as administrators of the estate of their son, Roy Everett Hurst, now appeal the grant of summary judgment in favor of Union Pacific, contending certain facts bring this case within the "unusual circumstances" exception to the rule and require a jury's resolution. However, under Oklahoma law as presently articulated, summary judgment was properly granted, and we affirm.
 
 I.
 
 3
 Plaintiffs' complaint alleged, at approximately 3:05 a.m., their 17-year-old son Roy was driving north on South Rock Creek Road in Pottawatomie County, Oklahoma, in an extremely heavy fog when he collided with a train owned by Union Pacific and driven by Marlyn Coleman. The complaint stated because of the heavy fog, "the train was not visible three cars away." As further evidence of the density of the fog, the complaint stated that within seconds after Roy Hurst's fatal collision another automobile traveling south on South Rock Creek Road ran into the other side of the same train. The complaint alleged that neither the moving train nor the crossing was equipped with any warning devices except for the standard wooden crossbuck railroad marker positioned on either side of the railroad crossing. The complaint alleged two similar collisions occurred at this crossing; the area around it was heavily populated; a school was located only 1,250 feet away; and on a particular day, 640 vehicles used the crossing. Plaintiffs alleged Union Pacific's knowledge of other fatal accidents "coupled with the dangerous nature of the crossing, the foggy conditions, heavy traffic count, dense population, and proximity to school, combined to create unusual circumstances under Oklahoma law" requiring Union Pacific to construct additional safety devices and its employee to drop flares to warn oncoming vehicles of the presence of trains. Having failed to perform that duty, plaintiffs alleged Union Pacific and its employee were negligent and sought $10,000 in compensatory and $10,000 in punitive damages.[1] Answering the complaint with the affirmative defense decedent's negligence was the proximate cause of the accident, the Union Pacific then moved for summary judgment under Fed.R.Civ.P. 56 on the grounds the occupied crossing rule barred plaintiffs' recovery, and the decedent failed to observe the Assured Clear Distance Ahead Rule under Oklahoma law.[2]
 
 
 4
 Granting summary judgment, the district court held the facts were uncontroverted that Roy Hurst drove into the 47th car of a moving freight train which was traversing the South Rock Creek Road crossing while the locomotive was already about one-half mile down the track at the time of the accident. Applying the Oklahoma occupied crossing rule that the presence of a train on a crossing, whether moving or stationary, is sufficient notice to the public of its presence unless "unusual circumstances" warrant additional warnings, the court held no unusual circumstances required Union Pacific to provide any other notice or warning. The court further concluded "decedent's failure to operate his vehicle at a careful and prudent speed so that he was able to stop within the assured clear distance ahead was the cause of the accident." The only issue appealed to us is whether the district court correctly applied the occupied crossing rule.
 
 II.
 The occupied crossing rule states:
 
 5
 Ordinarily, the presence of a train or railway cars on a crossing, whether moving or stationary, is sufficient notice to a driver of a vehicle, on the highway of such obstruction and, in the absence of unusual circumstances, the operating railway company is not under any duty to provide any other notice or warning.
 
 
 6
 Davis v. Burlington Northern, Inc., 663 F.2d 1028, 1030 (10th Cir.1981) (quoting Kansas, O. & G. Ry. Co. v. Painter, 333 P.2d 547, 548 (Okla.1958)) (emphasis added). The rule is not unique to the common law of Oklahoma. See, e.g., Port Terminal R.R. Ass'n v. Richardson, 808 S.W.2d 501, 505 (Tex.App.1991); Missouri Pac. R.R. Co. v. Cooper, 563 S.W.2d 233, 235 (Tex.1978); Sargent v. Southern Pac. Transp. Co., 264 Or. 435, 504 P.2d 729, 732 (1972); Chaney v. Wabash R. Co., 422 S.W.2d 349, 352 (Mo.1967); Still v. Hampton & Branchville R.R., 258 S.C. 416, 189 S.E.2d 15, 20 (1972); Grisamore v. Atchison, T. & S.F. Ry. Co., 195 Kan. 16, 403 P.2d 93, 97 (1965); Illinois Central R.R. Co. v. Williams, 242 Miss. 586, 135 So.2d 831, 834 (1961); Hogg v. Bessemer & Lake Erie R.R. Co., 373 Pa. 632, 96 A.2d 879, 885 (1953).
 
 
 7
 What does appear to be unique, however, is the absence of any Oklahoma case presenting an "unusual circumstance" to remove the rule's otherwise absolute bar to railroad liability. For example, in Davis, 663 F.2d at 1030, the court stated "inclement weather such as mist, rain, and fog are not 'unusual circumstances' within the meaning of the rule, but are hazards common to those who travel upon the highways." In Cain v. St. Louis-San Francisco R.R. Co., 293 P.2d 355 (Okla.1955), the court found that overgrown vegetation obscuring the crossing and obstacles blocking the view of the crossing were not unusual circumstances. Neither the absence of a crossbuck warning sign, Fleming v. Loch, 200 Okl. 448, 195 P.2d 942 (1948), nor darkness is considered an unusual circumstance. Kansas, O. & G. Ry. Co. v. Painter, 333 P.2d at 547; Kurn v. Jones, 187 Okl. 94, 101 P.2d 242, 244 (1940). A driver's ignorance of the existence of a railroad crossing is also not an exception as then "the rule is thereby nullified or abrogated, since the railway company would never know when a stranger or one not familiar with the existence of the crossing would approach, so that the railway company would at all times and under all conditions be required to anticipate and guard against such a driver." Atchison, T. & S.F. Ry. Co. v. Templar, 204 Okl. 460, 230 P.2d 907, 910 (1951) (road which decedent had never traveled curved just before the crossing).
 
 
 8
 Appellee's Supplemental Appendix[3] offers additional cases to illustrate how absolute the defense becomes when raised.[4] In a Magistrate Judge's Report and Recommendation, the rule was applied to bar recovery when an automobile traveling at night ran into a flatbed railroad car parked in a railroad crossing which (1) had not been used in two and one-half years or maintained in over five years; (2) was overgrown with weeds; (3) the crossbuck warning sign had fallen down; and (4) there were washed out areas and deteriorated crossing timbers on the track. None of these circumstances was found to be unusual nor were any conditions in combination unusual. The track was occupied, and the railroad was under no additional duty to warn of the train's presence. Plaintiff's parents were killed in the accident. Deaver v. Missouri Pac. R.R. Co., No. 90-C-269-C (N.D.Okla. Jan. 30, 1991).
 
 
 9
 In another order submitted by the Union Pacific, the district court barred plaintiff's lawsuit for injuries she received when she drove her pickup into the 27th car of a 59-car freight train at 2:00 a.m. on a "dark, clear, and dry" night. In that case, the track had been abandoned for a period of time but was put back in service six months earlier. At the time of the collision, high weeds and brush obscured the track, and the train's presence blocked plaintiff's view of the crossbuck sign. The court rejected plaintiff's argument that having taken the track out of use, the railroad had a duty to inform the public about its reuse. Harris v. Missouri-Kansas-Texas R.R. Co., No. 83-2610-R (W.D.Okla. June 18, 1984).[5]
 
 
 10
 Each of these cases illustrates not simply that no circumstance yet constitutes an unusual circumstance, but also that the presence in and of itself of a train at a crossing regardless of the conditions surrounding that presence is legal notice. In addition, because the presence of a train, whether moving or stationary, is the single distinguishing factor in the defense, the occupied crossing rule remains impervious to the emerging common law negligence analysis applied in "simultaneous" or "approaching train" cases. See Walker v. St. Louis-San Francisco Ry. Co., 646 P.2d 593 (Okla.1982).[6]
 
 
 11
 Against this background, plaintiffs have failed to make a factual showing sufficient to withstand summary judgment. Here, in addition to the allegations in the amended complaint, plaintiffs submitted five "Official Police Traffic Collision Reports" documenting five collisions at the South Rock Creek crossing.[7] The report of Roy Hurst's accident notes the driver was traveling 65 mph in a 55 mph area, on a wet road, in the fog at 3:05 a.m. when his truck collided with the 47th car of the moving train. He died instantly. Another report details the second accident that occurred shortly after this one. There, the driver was traveling southbound 30 mph in fog and darkness toward the South Rock Creek crossing when he saw the train stopped in the crossing. Unable to stop, this second driver collided with the 57th car of the train. That both accidents occurred in the dense fog with the second driver traveling well under the legal speed limit must raise the inference that "the presence" of the train on this crossing was not discernible until the traveling public was so close that stopping was impossible.[8] Nevertheless, under Oklahoma law, it is not relevant that a driver can "see" the presence of the train as long as the train occupies the crossing. The rule thus amounts to a restatement of Justice Holmes' "stop, look, and listen" prescript. Baltimore & Ohio R.R. v. Goodman, 275 U.S. 66, 48 S.Ct. 24, 72 L.Ed. 167 (1927). That rule, of course, has long been limited and repudiated. Pokora v. Wabash Ry. Co., 292 U.S. 98, 54 S.Ct. 580, 78 L.Ed. 1149 (1934); Kloewer v. Burlington Northern, Inc., 512 F.2d 300 (8th Cir.1978).[9]
 
 
 12
 In effect, the rule "buck[s] the twentieth-century trend ... toward leaving questions of care to the jury to be decided under the broad, unelaborated standard of negligence. Both rules [the standing train rule and the stop, look and listen rule] also buck the trend ... toward making the victim's negligence a partial rather than a complete bar to damages." Trevino v. Union Pac. R.R. Co., 916 F.2d 1230, 1235 (7th Cir.1990) (citations omitted).[10]
 
 
 13
 Indeed, in the procedural posture of these cases, this treatment is noteworthy. "Negligence is a seldom enclave for trial judge finality. Negligence is a composite of the experiences of the average man and is thus usually confined to jury evaluation." Keating v. Jones Dev. of Mo., Inc., 398 F.2d 1011, 1015 (5th Cir.1968), cited in 10A C. Wright, A. Miller, M. Kane, Federal Practice and Procedure § 2729, at 195 (1983). In fact, in most of the early cases, mechanically cited in the later cases, the occupied crossing rule prevailed after plaintiff had an opportunity to present evidence in a trial. See, e.g., Holt v. Thompson, 115 F.2d 1013 (10th Cir.1940); Wm. A. Smith, Constr. Co. v. Brumley, 88 F.2d 803 (10th Cir.1937).
 
 
 14
 Thus, in the summary judgment context, the application of the occupied crossing rule transforms the determination of whether certain circumstances are unusual, a question of fact, into a question of law for the court alone to resolve. To date, no factual showing has overcome this legal threshold.[11] Consequently, defendant Union Pacific has no burden of production other than to state a train occupied the crossing. Given this state of the common law, plaintiffs' pleadings and other submissions do not "make a sufficient showing on an essential element of [their] case with respect to which [they] have the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 15
 AFFIRMED.
 
 
 
 *
 The Honorable Richard Owen, Sr., United States District Court Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The Union Pacific removed this action before the effective date of the 1988 amendments to 28 U.S.C. § 1332 increasing the amount in controversy for diversity jurisdiction to $50,000
 
 
 [2]
 Okla.Stat. tit. 47, § 11-801(a) states:
 Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.
 
 
 [3]
 It appears the Union Pacific submitted these cases along with its brief in support of its motion for summary judgment
 
 
 [4]
 We would also note the exception to the rule was earlier held to apply "in the absence of unusual circumstances which rendered the crossing extra-hazardous." Atchison, T. & S.F. Ry. Co. v. Templar, 204 Okl. 460, 230 P.2d 907, 909 (1951) (emphasis added). Nevertheless, Union Pacific contends the Oklahoma Supreme Court applies a separate and different analysis to decide whether a crossing is extrahazardous
 
 
 [5]
 In an unpublished opinion of this court which Union Pacific also appended to its brief but cannot be used for any purpose, Judge Lewis notes that although the law of other states would prevent the granting of summary judgment, "the law of Oklahoma is clearly otherwise." Kirkland v. Missouri-Kansas-Texas R.R. Co., (No. 74-1280, Nov. 1974). In that case, the railroad's flatcar occupied the crossing for 20-40 seconds while train switchmen performed some task 40 feet from the crossing. In the darkness, the black, unmarked flatcar whose bed stood 3-4 feet above the track with no other lighting at the crossing was thus judged as a matter of law to constitute sufficient warning of its presence to decedent. We in no way rely upon this case but refer to it only for illustrative reasons
 
 
 [6]
 In Walker, the Oklahoma Supreme Court held:
 [L]iability may be imposed absent a statutory requirement if the facts of the particular case are such as to give the railroad the duty to warn the traveling public of the extra-hazardous nature of the crossing. The question of the presence of an extra-hazardous crossing should be left to the jury's determination.
 
 
 [646]
 P.2d 593, 597 (Okla.1982). In reaching this result, the Court aligned Oklahoma law with the majority view that common law rules of negligence are applicable even though statutes and regulations furnish standards governing a railroad's duty in certain situations. Rejecting plaintiff's contention the Walker analysis should be applied to determine whether the particular unusual circumstances present at the trial of decedent's accident rendered the crossing extrahazardous, the district court stated it was "in complete agreement with the Defendant that the Oklahoma Occupied Crossing Rule as expressed in a multitude of decisions is still good law and is unchanged by the Oklahoma Supreme Court's opinion in Walker." The factual distinction of an occupied crossing in contrast to a simultaneous collision permitted the different treatment
 Other jurisdictions ask what factors render an occupied crossing extrahazardous to require the railroad to take additional measures to warn the traveling public. See Sargent v. Southern Pac. Transp. Co., 264 Or. 435, 504 P.2d 729 (1972); O'Dell v. Chicago, Milwaukee, St. Paul & Pac. R. Co., 6 Wash.App. 817, 496 P.2d 519, 522 (Wash.1972) ("If unusual or extraordinarily dangerous circumstances prevail, the presence of the train in the crossing is not alone such a warning as to constitute reasonable care and prudence by the railroad under the circumstances.").
 
 
 [7]
 In its order, the district court does not refer to these reports or even mention the second accident which occurred within a few minutes of plaintiff-decedent's
 
 
 [8]
 Against this inference, a jury would consider all of the facts related to a comparative negligence determination under Oklahoma law
 
 
 [9]
 Justice Cardozo reminds in Pokora, "Standards of prudent conduct are declared at times by courts, but they are taken over from the facts of life." 292 U.S. at 104, 54 S.Ct. at 582
 
 
 [10]
 In Trevino, the Seventh Circuit analyzed Illinois law under which a blinding snowstorm could be a special circumstance although heavy fog was not. "All a blinding snowstorm does is reduce visibility, and a heavy fog can reduce it just as much." 916 F.2d 1230, 1234. The Trevino plaintiff collided with an unused flatcar which had crashed through a fence the railroad constructed across a track that hadn't been used in a decade. The Seventh Circuit held the district court improperly granted the railroad's motion to dismiss. "Construing the facts favorably to the plaintiff ... as we must do when a case is dismissed on the pleadings, we have here a situation in which a driver at night, having every reason to believe that a railroad car would be about as likely to be found in the middle of the road as an escaped circus elephant, drives into the car because the car is low to the ground and is of the same dark color as the surrounding vegetation...." Id. at 1238
 
 
 [11]
 During oral argument, counsel for plaintiffs and the Union Pacific agreed they could cite no Oklahoma case finding an unusual circumstance. Asked whether there were any Oklahoma cases where a railroad operator was found liable for an unguarded crossing, Union Pacific counsel answered he had found none. Our research has fared no better