968 F.2d 19
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Danny D. DEAVER, as the Personal Representative of the
Estates of Walter S. Deaver and Della J. Deaver,
Deceased, Plaintiff-Appellant,
v.
MISSOURI PACIFIC RAILROAD COMPANY, a Delaware corporation,
d/b/a Union Pacific Railroad Company, and
Missouri-Kansas-Texas Railroad Company,
a Delaware corporation,
Defendants-Appellees.
 No. 91-5115.
 United States Court of Appeals, Tenth Circuit.
 June 16, 1992.
 
 1
 Before McKAY, Chief Judge, McWILLIAMS, Senior Circuit Judge, and EISELE*, Senior District Judge
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 G. THOMAS EISELE, Senior District Judge, Sitting by designation.
 
 
 4
 This diversity civil action for negligence brought by Mr. Danny Deaver as the personal representative of the estates of his deceased parents against the defendant railroad company was removed from the Oklahoma District Court to the U.S. District Court for the Northern Division of Oklahoma. Summary judgment was then entered in favor of the defendant and this appeal followed. We affirm.
 
 
 5
 The case turns on the proper interpretation and application of Oklahoma's common law "occupied crossing rule" which is most frequently stated as follows:
 
 
 6
 "Ordinarily, the presence of a train or railway cars on a crossing, whether moving or stationary, is sufficient notice to a driver of a vehicle, on the highway of such obstruction and, in the absence of unusual circumstances, the operating railway company is not under any duty to provide any other notice or warning."
 
 
 7
 Kansas, Oklahoma & Gulf Ay. Co. v. Painter, 333 P2d 547, 548 (Okla.1958).
 
 FACTUAL BACKGROUND
 
 8
 The important facts, as stated in appellant's brief, are:
 
 
 9
 On November 20, 1989, the decedents, Walter S. Deaver and Della J. Deaver, were travelling east, at night, on Highway 69A, near Pryor, Oklahoma. At approximately 8:35 p.m., the Deaver's automobile struck a stationary flatbed railcar at a crossing owned and maintained by MoPac. There was no notice of an imminent hazard given to Walter Deaver other than the actual presence of the train. MoPac's railroad crossing had not been used in two and one-half years and had not been maintained in over five years. It was overgrown with weeds, and the crossbuck warning sign had fallen down. There were several washed-out areas at the crossing, and the crossing's timbers had deteriorated. The accident occurred approximately three hours after sundown. The crossing was either totally dark or was very dimly lighted. The decedents left no skidmarks.
 
 
 10
 On the night the Deavers were killed, MoPac's train blocked the crossing while the train's crew executed a switching operation. The switching operation could have been performed during daylight hours. The switching operation could have been performed on the Escoa Plant adjacent to U.S. Highway 69A without obstructing traffic. MoPac's train had been obstructing the crossing approximately ten minutes prior to the accident in question and an empty flatbed railcar was left blocking the highway. MoPac's employees took no actions to set out fusees, lights, or to act as flagmen.
 
 
 11
 (Appellant's Brief P. 3-4).
 
 Other uncontroverted facts are:
 
 12
 The decedents were travelling to their home from the grocery store at the time of the accident.
 
 
 13
 The train was stationary over the crossing at the time of the collision.
 
 
 14
 At the time of the accident, it was night, the weather was clear, and the roadbed was dry.
 
 
 15
 There was a standard Oklahoma Department of Transportation advance warning sign.
 
 
 16
 There were pavement markings on the approach to the crossing.
 
 
 17
 The railroad crossbuck on the side from which the Deaver vehicle approached was down.
 
 
 18
 It further appears that the legal speed limit on the highway at the time of the accident was 55 miles per hour. The investigating officer estimated the speed of the Deaver's vehicle at from 40 to 45 miles per hour at impact.
 
 
 19
 The plaintiff also asserts violations by the defendant of certain laws, regulations, internal rules, and industry standards, among which are the following:
 
 
 20
 The crossing was not maintained in a "proper and safe condition" and thus was in violation of both industry standard and Oklahoma state law.
 
 
 21
 The train crew did not take "reasonable precautions for the safety of the motoring public" in violation of industry standards and appellees' own rule. The train crew created an ultrahazardous situation by blocking the crossing at night and failing to take reasonable precautions to warn the motoring public of the situation or otherwise lessen the danger.
 
 
 22
 MoPac failed to provide a sufficient number of train crewmen to safely perform the switching job in regard to motorists' safety.
 
 
 23
 The northernmost train car was not equipped with a light, in violation of industry standard.
 
 
 24
 MoPac blocked the crossing for a time in excess of five minutes when there was no reason to do so, thereby violating industry standard and appellees' own rule.
 
 
 25
 (Appellant's Brief, p. 6.)
 
 DISTRICT COURT'S RULINGS
 
 26
 The Oklahoma "Occupied Crossing Doctrine" purports to recognize that "unusual circumstances" might occur, or be present, which could require additional precautions on the part of the railroad, i.e. that would remove the absolute bar of the basic doctrine. Plaintiff asserts such unusual circumstances were present here, to-wit:
 
 
 27
 The crossing had been abandoned for two and one-half years and had not been maintained in over five years.
 
 
 28
 It was undisputed that one of the train's engines did not have a properly working headlight.
 
 
 29
 According to the investigating Oklahoma Highway Patrol officer, the decedent's vehicle was travelling 10-15 miles per hour below the legal speed limit at the time of impact.
 
 
 30
 The appellees' switching operation did not require that the crossing be blocked, but rather could have been performed completely off the highway right-of-way. This was a violation of MoPac's own policy.
 
 
 31
 Additionally, there was evidence which constituted unrebutted proof that the appellees had failed to comply with Oklahoma statutes regarding statutorily-imposed duty to protect the motoring public. Specifically:
 
 
 32
 A. Failure to maintain a crossbuck.
 
 
 33
 B. Failure to maintain the crossing properly.
 
 
 34
 Finally, there was uncontroverted evidence that appellees' actions, which resulted in the death of the Deavers, was in violation of appellee's own company rules and/or policy, specifically:
 
 
 35
 Appellees blocked the crossing in excess of five minutes when there was no reason to do so; this was a violation both of industry standard and appellees' own rules regarding blocking a crossing.
 
 
 36
 (Appellant's Brief, p. 14-15.)
 
 
 37
 The U.S. Magistrate Judge focused in on the "unusual circumstances" contention. He concluded:
 
 
 38
 "Oklahoma courts have expressly stated that the same conditions here asserted by the Plaintiff as being unusual, are in fact, not at all unusual but 'conditions common to those who travel on the highway'. Therefore, Plaintiff's contention that the Defendant was negligent by not giving additional warning must be found to be unsupported. "Plaintiff further contends that the railroad crossing is ultra-hazardous, thereby preventing the application of the Occupied Crossing Doctrine. In some cases the term extrahazardous is used in relation to the Occupied Crossing Doctrine. However, when this term is used it does not describe an additional exception to the 'unusual circumstances exception. Rather the term 'extrahazardous' when used, is used interchangeably with 'unusual circumstances'. The ultrahazardous consideration has not been applied to an Occupied Crossing case. Courts have, however, considered the question of extra hazardousness circumstances in situation where the automobile and the train arrive at the crossing simultaneously. In situations such as these the Occupied Crossing Doctrine has not been applied, the courts finding that the doctrine requires that the railroad car have been on the track before the automobile collides with it. Since these facts do not contemplate a 'simultaneous' meeting of the car and train no further discussion is necessary."
 
 
 39
 The U.S. District Judge upheld the Magistrate Judge's recommendation on this issue in the following language:
 
 
 40
 "As a second ground for objection to the Magistrate Judge's recommendation, plaintiff asserts that 'unusual circumstances' exist to defeat summary judgment in defendant's favor. It is uncontroverted that the crossing in question was overgrown with weeds, the crossbuck warning sign had fallen down, there were several washed out areas along the tracks and the crossing timbers had deteriorated. Although on the night of the accident it was a clear evening, the area was dimly lit. The surrounding area was industrial and the track in question had not been used by the railroad in approximately two and a half years. From a review of prevailing Oklahoma case law, the Magistrate Judge correctly determined that such circumstances are not considered 'unusual' but rather are considered 'conditions common to those who travel on the highway.' Plaintiff's reliance on cases from states other than Oklahoma cannot be used as authority for this Curt to hold contrary to a well established doctrine under Oklahoma law. Even though in applying the laws of other states, under these facts, summary judgment may be precluded."
 
 
 41
 In the lower court, appellant argued that the enactment by the Oklahoma legislature of the Comparative Negligence law in 1973 abrogated the Occupied Crossing Rule. The Magistrate Judge dealt with this issue as follows:
 
 
 42
 "Plaintiff also contends that Oklahoma's 1973 adoption of the comparative negligence statute in 23 O.S. § 13 provides a means for recovery despite the Occupied Crossing Doctrine. Under the comparative negligence statute plaintiff can recover for the defendant's negligence so long as he was not more negligent than defendant. However, the plaintiff must still show that the defendant was negligent. Under the Occupied Crossing Doctrine there is no negligence to compare. Therefore, absent unusual circumstances the comparative negligence statute cannot allow a plaintiff to recover. 'The burden is on the plaintiff to establish unusual circumstances' and since this plaintiff cannot show the unusual circumstances which would place an additional duty of care on the defendant Railroad, and raise an issue of negligence, the comparative negligence statute will not avail him. Plaintiff has not shown any factual circumstances constituting negligence."
 
 
 43
 The Magistrate Judge relied upon Oklahoma City-Ada-Atoka Railway Co. v. Nickels, 343 P.2d 1094, 1099 (Okla.1959); Lowden v. Bowles, 105 P.2d 1061, 1062 (Okla.1940); and Davis v. Burlington Northern, Inc., 663 F.2d 1026, 1030 (10th Cir.1981) in support of these conclusions.
 
 DISCUSSION
 
 44
 Summary judgment is appropriate only where there is no genuine issue of material fact. The standards presently used in applying Rule 56 are set out in Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Matsushita Electric v. Zenith Radio, 476 U.S. 574 (1986); and Anderson v. Liberty Lobby, 477 U.S. 242 (1986), among others. The parties do not disagree on these standards.
 
 
 45
 This Court, in dealing with the substantive issues, must, under the Erie Railroad doctrine, apply the law of Oklahoma.
 
 
 46
 The Supreme Court of the State of Oklahoma adopted the occupied Crossing Rule long ago and that Court, and this Court, have applied that rule in a number of cases over the years. The most recent case is Hurst v. Union Pacific Railroad Co., --- F.2d ---- (1992), Case No. 91-6091, decided by this Court in an opinion filed March 10, 1992.
 
 
 47
 Interestingly, the unanimous opinion written by Judge John P. Moore in the Hurst case cited the Magistrate Judge's opinion in this case as additional authority for this Court's affirmance of a grant of summary judgment in favor of the railroad. Nevertheless, it is clear from a reading of Judge Moore's opinion that the result would have been the same absent the existence of the precedent created by the Magistrate Judge's decision in this case.
 
 
 48
 The Oklahoma Occupied Crossing Doctrine has been rationalized as an application of the more general rule that a driver of a motor vehicle should drive in such a manner and at such speed as will permit him or her to stop before hitting another vehicle or object in the road. The rule of "assured clear distance ahead" is found in Okla.Stat. tit. 7, § 11-801(a) and (d) as follows:
 
 
 49
 (a) "Any person driving a vehicle on a highway shall drive the same in a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.
 
 
 50
 (d) "The driver of every vehicle shall, consistent with the requirements of paragraph (a) drive at an appropriate reduced speed when approaching and crossing ... [a] railroad grade crossing ..."
 
 
 51
 Oklahoma takes the position that automobiles are required to yield the right-of-way at railroad crossings because a driver of an automobile ordinarily has the greater ability to stop or otherwise avoid the collision. See Jester v. St. Louis-an Francisco Ry. Co. 413 P.2d 539 (Okla.1965).
 
 
 52
 The plaintiff-appellant argues that historically Oklahoma developed the Occupied Crossing Rule as a consequence of its pre-1973 position that contributory negligence was an absolute bar. But he cites no authority that supports this theory. And he goes on to argue that after 1973, when Oklahoma adopted a comparative negligence statute (23 O.S. § 13), the new law governed in "all actions ... for negligence resulting in personal injuries or wrongful death". He states, "Under current Oklahoma law, all negligence by all parties must be compared, and it must be compared by a jury.... The issue of comparative negligence is always one of fact.... It was thus improper for the trial court to enter summary judgment in the instant case...." (Amended Brief of Appellant, p. 9). But the Oklahoma law is clearly to the contrary. Many cases have sustained summary judgment since 1973 based on the Occupied Crossing Doctrine. This is because Oklahoma treats the issue as one of proximate cause rather than comparative negligence. In Davis v. Burlington Northern 663 F.2d 1028 (10th Cir.1981) this Court sustained a summary judgment in favor of the defendant railroad company in the face of clear evidence of the railroad's negligence. It rejected the argument that the Oklahoma comparative negligence statute of 1973 in effect did away with the Occupied Crossing Rule. The Court, after noting that the defendant railroad company violated specific safety statutes, stated:
 
 
 53
 "A violation of the foregoing statutes would not and could not have been a proximate cause of the collision in the instant case."
 
 
 54
 Davis, 663 F.2d at 1030. In sum, the Oklahoma courts and this Court have, in effect, stated that, in the absence of unusual circumstances, the sole proximate cause of such crossing collisions is the plaintiff's inability to stop his or her vehicle within the assured clear distance ahead. Under ordinary and usual circumstances causation in these occupied railroad crossing cases apparently becomes simply a matter of law.
 
 
 55
 In the Hurst case a 17-year-old was driving in a heavy fog at 3:05 a.m. when he collided with a railroad train obstructing the crossing. It was alleged that the train was not visible three cars away. Within seconds after this fatal collision another automobile ran into the other side of the train. The Hurst opinion further identifies the "unusual circumstances" claimed by the plaintiff in that case:
 
 
 56
 "The complaint alleged that neither the moving train nor the crossing was equipped with any warning devices except for the standard wooden crossbuck railroad marker positioned on either side of the railroad crossing. The complaint alleged two similar collisions occurred at this crossing; the area around it was heavily populated; a school was located only 1,250 feet away; and on a particular day, 640 vehicles used the crossing. Plaintiffs alleged Union Pacific's knowledge of other fatal accidents' coupled with the dangerous nature of the crossing, the foggy conditions, heavy traffic count, dense population, and proximity to school, combined to create unusual circumstances under Oklahoma law' requiring Union Pacific to construct additional safety devices and its employee to drop flares to warn oncoming vehicles of the presence of trains."
 
 
 57
 The defendant railroad answered that the plaintiff's negligence was the proximate cause of the accident and then moved for summary judgment on the ground that the Occupied Crossing Rule barred recovery. The district court granted summary judgment holding that no unusual circumstances in that case required the railroad to provide any other notice or warning. The trial court further concluded that plaintiff's decedent's failure to operate his vehicle so that he would be able to stop within the assured clear distance was the cause of the accident. On appeal to this Court the sole issue was whether the district court correctly applied Oklahoma's Occupied Crossing Rule. This Court held that it did, stating:
 
 
 58
 "What does appear to be unique, however, is the absence of any Oklahoma case presenting an 'unusual circumstance' to remove the rule's otherwise absolute bar to railroad liability. For example, in Davis 663 F.2d at 1030, the court stated 'inclement weather such as mist, rain, and fog are not 'unusual circumstances' within the meaning of the rule, but are hazards common to those who travel upon the highways.' In Cain v. St. Louis-San Francisco R.R. Co., 293 P.2d 355 (Okla.1955), the court found that overgrown vegetation obscuring the crossing and obstacles blocking the view of the crossing were not unusual circumstances. Neither the absence of a crossbuck warning sign, Fleming v. Loch, 200 Okla. 448, 195 P.2d 942 (1948), nor darkness is considered an unusual circumstance. Kansas O. & G. Ry. Co. v. Painter, 333 P.2d at 547; Kurn v. Jones, 187 Okla. 94, 101 P.2d 242, 244 (1940). A driver's ignorance of the existence of a railroad crossing is also not an exception as then 'the rule is thereby nullified or abrogated, since the railway company would never know when a stranger or one not familiar with the existence of the crossing would approach, so that the railway company would at all times and under all conditions be required to anticipate and guard against such a driver.' Atchison, T. & S.F. Ry. Co. v. Templar, 204 Okla. 460, 230 P.2d 907, 910 (1951) (road which decedent had never traveled curved just before the crossing)."
 
 
 59
 After citing the Magistrate Judge's opinion in this case, the Court continued:
 
 
 60
 "In another order submitted by the Union Pacific, the district court barred plaintiff's lawsuit for injuries she received when she drove her pickup into the 27th car of a 59-car freight train at 2:00 a.m. on a 'dark, clear, and dry' night. In that case, the track had been abandoned for a period of time but was put back in service six months earlier. At the time of the collision, high weeds and brush obscured the track, and the train's presence blocked plaintiff's view of the crossbuck sign. The court rejected plaintiff's argument that having taken the track out of use, the railroad had a duty to inform the public about its reuse. Harris v. Missouri-Kansas-Texas R.R. Co., No. 83-2610-R (W.D.Okla. June 18, 1984).
 
 
 61
 "Each of these cases illustrates not simply that no circumstance yet constitutes an unusual circumstance, but also that the presence in and of itself of a train at a crossing regardless of the conditions surrounding that presence is legal notice. In addition, because the presence of a train, whether moving or stationary, is the single distinguishing factor in the defense, the occupied crossing rule remains impervious to the emerging common law negligence analysis applied in 'simultaneous' or 'approaching train' cases."
 
 
 62
 After setting forth the plaintiff's argument that the facts made it clear that the presence of the train on the crossing was not discernible until the travelers on the highway were so close that stopping was impossible, Judge Moore stated:
 
 
 63
 "Nevertheless, under Oklahoma law, it is not relevant that a driver can 'see' the presence of the train as long as the train occupies the crossing. The rule thus amounts to a restatement of Justice Holmes' 'stop, look, and listen' prescript. Baltimore & Ohio R.R. v. Goodman, 275 U.S. 66 (1927).
 
 
 64
 The Court in Hurst notes that the whole 20th century trend of the law is contrary to the Oklahoma position but nevertheless acknowledged that this Court must accept and follow the Oklahoma precedents. The Court's opinion in Hurst concludes:
 
 
 65
 "Thus, in the summary judgment context, the application of the occupied crossing rule transforms the determination of whether certain circumstances are unusual, a question of fact, into a question of law for the court alone to resolve. To date, no factual showing has overcome this legal threshold. Consequently, defendant Union Pacific has no burden of production other than to state a train occupied the crossing. Given this state of the common law, plaintiffs' pleadings and other submissions do not 'make a sufficient showing on an essential element of [their] case with respect to which [they] have the burden of proof.' Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)."
 
 
 66
 We accept and follow our decision in Hurst, and hold that none of the circumstances contended by the plaintiff-appellant to be 'unusual,' taken individually or collectively, are sufficient to bring his case within the exception to Oklahoma's occupied crossing rule.
 
 
 67
 The appellant also contends that the occupied crossing rule does not bar recovery on behalf of the estate of the passenger, here Mrs. Deaver. However, the same principles which bar the driver under Oklahoma law also bar recovery by, or on behalf of, the passenger or passengers. See Holt v. Thompson, 115 F.2d 1013 (10th Cir.1940); Cain v. St. Louis-San Francisco Railroad, 293 P.2d 355 (Okla.1955); and Thompson v. Carter, 137 P.2d 956 (Okla.1943).
 
 
 68
 The Court agrees with appellee that the question whether a crossing is 'extrahazardous' under Oklahoma law does not come into play in a case where a crossing is actually occupied by a train when a vehicle approaches it. That test relates to the situation where it must be determined if a motorist should reasonably apprehend the approach of a train. Again, the Hurst opinion, both in its holdings and in its treatment of Walker v. St. Louis-San Francisco Ry. Co., 664 P.2d 593 (Okla.1982) makes this clear. See Hurst slip op. p. 9 and footnote 6 thereto.
 
 
 69
 Judge Moore began his decision in Hurst with the following language:
 
 
 70
 "This appeal unlooses a legal dinosaur, which, once out, tramples twentieth century negligence law and then lumbers back to its dark cave only to await another victim. The jurisprudential fossils it leaves behind are truly daunting as this case illustrates. However, absent any contra-indication from the Oklahoma Supreme Court, the dinosaur prevails."
 
 
 71
 We accept that statement as an appropriate characterization of Oklahoma's occupied crossing doctrine and as an accurate assessment of its present effect.
 
 
 72
 AFFIRMED.
 
 
 
 *
 Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for the purposes of establishing the doctrines of law of the case, res judicata or collateral estoppel. 10th Cir.R. 36.3